UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

LYKOURGOS TSIRAKIS,                              :   Case No. 16-cv-00024 (PKC)
                                                 :
                 Plaintiff,                      :
                                                 :
                 v.                              :   **DEFENDANT'S ANSWER TO THE**
                                                 :   **FIRST AMENDED COMPLAINT**
FIELD STREET CAPITAL MANAGEMENT,                 :   <u>**AND COUNTERCLAIMS**</u>
LLC,                                             :
                                                 :
                 Defendant.                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

        Defendant Field Street Capital Management, LLC ("Defendant" or "Field Street"),

through its undersigned counsel, answers the First Amended Complaint (the "Complaint") filed

by Plaintiff Lykourgos Tsirakis ("Plaintiff" or "Tsirakis"), as follows:

        1.      Denies the allegations contained in paragraph 1 of the Complaint.

        2.      Denies the allegations contained in paragraph 2 of the Complaint, except

admits that Tsirakis resigned from Field Street in April 2015 to pursue his own business.

        3.      Denies the allegations contained in paragraph 3 of the Complaint, except

admits that Tsirakis and Field Street entered into the "Separation Agreement," and refers the

Court to the Separation Agreement for its true and complete contents.  Field Street further avers

that, at the time of the Separation Agreement's execution, Tsirakis, as a result of his voluntary

resignation, had no right to the alleged $8 million in deferred compensation (or any deferred

compensation) nor to any other compensation apart from his salary through the date of his

resignation.

        4.      Denies the allegations contained in paragraph 4 of the Complaint, except

admits that Field Street sent Tsirakis, through counsel, a letter dated December 15, 2015, and

refers the Court to such letter for its true and complete contents, and admits that Field Street

revoked its permission for Tsirakis to use Field Street's confidential track record information due

to Tsirakis' failure to comply with the Separation Agreement.

5.      Denies the allegations contained in paragraph 5 of the Complaint.

6.      Denies the allegations contained in paragraph 6 of the Complaint, except

admits that Tsirakis purports to bring this action for a declaratory judgment and alleged damages,

and specifically denies that Tsirakis is entitled to any of the requested relief.

7.      Denies having knowledge or information sufficient to form a belief as to

the truth of the allegations contained in paragraph 7 of the Complaint.

8.      Admits the allegations contained in paragraph 8 of the Complaint.

9.      Admits the allegations contained in paragraph 9 of the Complaint.

10.      States that paragraph 10 consists of legal conclusions as to which no

response is required.

11.      States that paragraph 11 consists of legal conclusions as to which no

response is required, and to the extent a response is required, denies having knowledge or

information sufficient to form a belief as to the truth of the allegations contained in paragraph 11.

12.      Denies the allegations contained in paragraph 12 of the Complaint, except

admits that Tsirakis joined Field Street as a portfolio manager in 2011.

13.      Denies the allegations contained in paragraph 13 of the Complaint, except

admits that Tsirakis' terms of employment with Field Street provided that certain compensation

would vest over time.

14. Denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint, except admits that on or about April 28, 2015, Tsirakis delivered a letter confirming his resignation.

15. Denies the allegations contained in paragraph 15 of the Complaint, except admits that Field Street and Tsirakis entered into the Separation Agreement on June 19, 2015, and refers the Court to the Separation Agreement for its true and complete contents. Field Street further specifically denies that it agreed to pay Tsirakis any "bonus," and avers that Field Street did not "impose" any covenants upon Tsirakis or "require" him to agree to anything, but rather, Tsirakis voluntarily entered into the Separation Agreement and agreed therein that he would adhere to the restrictive covenants in that agreement in exchange for severance pay and a limited right to use certain confidential track record information of Field Street, and further avers that, prior to entering into the Separation Agreement, Tsirakis had no legal entitlement whatsoever to severance pay (or any other compensation) or to use Field Street's confidential track record information.

16. Denies the allegations contained in paragraph 16 of the Complaint, except admits that Tsirakis agreed in the Separation Agreement to refrain from interfering with Field Street's relationships with its employees, and refers the Court to the Separation Agreement for its true and complete contents.

17. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Complaint, except denies that Tsirakis' use or disclosure of Field Street's confidential track record information was in compliance with the terms and conditions of the Separation Agreement.

18.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint.

19.     To the extent that Field Street understands the identity of the employee identified only as "Employee A," denies the allegations contained in paragraph 19 of the Complaint, except admits that Employee A joined Field Street in 2013 and reported to Tsirakis when they both worked for Field Street, and that Employee A reported to Rod Gancas, Field Street's Founder and Chief Investment Officer, after Tsirakis' departure.

20.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint.

21.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint.

22.     Denies the allegations contained in paragraph 22 of the Complaint, except admits that Employee A approached Mr. Gancas in early December 2015 and informed him that she intended to resign her employment with Field Street in order to work for Tsirakis, that she knew from Tsirakis that she could work for him if Field Street gave its permission, and she requested Field Street's permission to allow Tsirakis to hire her.

23.     Denies the allegations contained in paragraph 23 of the Complaint.

24.     Denies the allegations contained in paragraph 24 of the Complaint, except admits that Paul Iaboni, Field Street's Chief Operating Officer, sent Tsirakis, through counsel, a letter dated December 15, 2015, and refers the Court to such letter for its true and complete contents, and admits that Field Street revoked its permission for Tsirakis to use Field Street's confidential track record information due to Tsirakis' failure to comply with the Separation Agreement.

25.     Denies the allegations contained in paragraph 25 of the Complaint, and refers the Court to the December 15 letter for its true and complete contents.

26.     Denies the allegations contained in paragraph 26 of the Complaint, except admits that Tsirakis' act of disclosing to Employee A the nature of his restrictive covenant comprised part of Tsirakis' breach of his obligations to Field Street.

27.     Denies the allegations contained in paragraph 27 of the Complaint.

28.     Denies the allegations contained in paragraph 28 of the Complaint.

29.     Denies the allegations contained in paragraph 29 of the Complaint.

**<u>RESPONSE TO FIRST CAUSE OF ACTION</u>**

30.     For its response to paragraph 30 of the Complaint, Defendant Field Street hereby incorporates its responses to each preceding and subsequent paragraph as though fully set forth herein.

31.     Admits the allegations contained in paragraph 31 of the Complaint, and avers that Tsirakis has materially breached the Separation Agreement through various breaches of his obligations, including, in particular, his breach of Section 7(c)(ii) of the Separation Agreement.

32.     Denies the allegations contained in paragraph 32 of the Complaint, except admits that Field Street revoked its permission for Tsirakis to use Field Street's confidential track record information due to Tsirakis' failure to comply with the Separation Agreement, and avers that, on January 15, 2016, Field Street, through counsel, informed Tsirakis that it considered the Separation Agreement rescinded and of no force or effect due to Tsirakis' material breach of that agreement.

33.     States that, because the allegations contained in paragraph 33 of the Complaint purport to state a legal conclusion, no response is required, and to the extent a response is required, denies that Tsirakis is entitled to any relief.

34.     Denies the allegations contained in paragraph 34 of the Complaint, specifically denies that Tsirakis has any rights under the Separation Agreement, and avers that the Court should declare that the Separation Agreement has been rescinded and is of no force or effect due to Tsirakis' material breach of that agreement.

35.     Denies the allegations contained in paragraph 35 of the Complaint, and specifically denies that Tsirakis is entitled to any relief.

## RESPONSE TO SECOND CAUSE OF ACTION

36.     For its response to paragraph 36 of the Complaint, Defendant Field Street hereby incorporates its responses to each preceding and subsequent paragraph as though fully set forth herein.

37.     Denies the allegations contained in paragraph 37 of the Complaint, and refers the Court to the Separation Agreement for its true and complete contents.

38.     Denies the allegations contained in paragraph 38 of the Complaint.

39.     Denies the allegations contained in paragraph 39 of the Complaint.

40.     Denies the allegations contained in paragraph 40 of the Complaint.

## RESPONSE TO THIRD CAUSE OF ACTION

41.     For its response to paragraph 41 of the Complaint, Defendant Field Street hereby incorporates its responses to each preceding and subsequent paragraph as though fully set forth herein.

42.     Denies the allegations contained in paragraph 42 of the Complaint.

43.     Denies the allegations contained in paragraph 43 of the Complaint.

44.     Denies the allegations contained in paragraph 44 of the Complaint.

45.     Denies the allegations contained in paragraph 45 of the Complaint.

46.     Denies the allegations contained in paragraph 46 of the Complaint.

<u>**DEFENSES AND AFFIRMATIVE DEFENSES**</u>

Defendant Field Street asserts the following defenses and reserves all rights to assert other and additional defenses, cross claims and third-party claims not asserted herein as may be appropriate at a later time.  In asserting these defenses, Defendant Field Street does not assume any burden of proof, persuasion, or production with respect to any issue where the applicable law places such burden upon Plaintiff.

<u>**FIRST DEFENSE**</u>

The Complaint fails to state a claim against Field Street upon which relief may be granted.

<u>**SECOND DEFENSE**</u>

Plaintiff's claims fail because the contract Plaintiff seeks to enforce is unenforceable and subject to rescission due to Plaintiff's material breach of that contract.  On January 15, 2016, Field Street informed Plaintiff of its election to treat the Separation Agreement as rescinded due to Plaintiff's material breach.

<u>**THIRD DEFENSE**</u>

Plaintiff's claims are barred by Plaintiff's failure to satisfy the conditions precedent contained in the Separation Agreement.

## FOURTH DEFENSE

Plaintiff's claims are barred by Plaintiff's prior breach of the Separation Agreement.

## FIFTH DEFENSE

Plaintiff's claims are barred by failure of consideration.

## SIXTH DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

## SEVENTH DEFENSE

Some or all of Plaintiff's claims are unripe.

## EIGHTH DEFENSE

The grant of the relief sought by Plaintiff would result in unjust enrichment.

## NINTH DEFENSE

Plaintiff's claims are subject to offset.

## TENTH DEFENSE

Plaintiff's Third Cause of Action fails because the payment Plaintiff seeks to recover does not constitute "wages" within the meaning of Article 6 of the New York Labor Law. The payment at issue does not constitute the "earnings of an employee for labor or services rendered," and Section 198-c of the New York Labor Law expressly excludes employees like Plaintiff from the class of persons who may bring a claim under Article 6 for separation pay.

## ELEVENTH DEFENSE

Plaintiff's Third Cause of Action fails because Field Street did not make any "deduction" from wages within the meaning of Article 6 of the New York Labor Law.

## TWELFTH DEFENSE

Plaintiff cannot recover liquidated damages on his Third Cause of Action because Field Street believed in good faith that its conduct was in compliance with applicable law.

## COUNTERCLAIMS OF FIELD STREET

Defendant-Counterclaimant Field Street asserts the following counterclaims against Plaintiff Tsirakis and states as follows:

## INTRODUCTION

1.     Field Street's counterclaims result from Tsirakis' brazen, multiple and material breaches of the Separation Agreement, which he had signed just months earlier in connection with his resignation from Field Street.  It was Tsirakis, not Field Street, who violated the parties' agreement.

2.     Tsirkais' Complaint is premised on a disingenuous – and legally irrelevant – attempt to argue that his conduct did not violate the Separation Agreement.  But despite his attempts to obfuscate the truth, Tsirakis plainly violated both the letter and spirit of the Separation Agreement by his wrongful recruitment of "Employee A."  Tsirakis' breach precludes any claim he might make for the generous severance pay that was conditioned on Tsirakis' compliance with his obligations.

3.     Worse still, after his wrongful recruitment of Employee A became apparent, Field Street learned that Tsirakis had also trampled on his obligations with respect to his handling of Field Street's confidential track record information.

4. As a result of Tsirakis' breaches, Field Street has been deprived of the rights it negotiated in the Separation Agreement and has suffered damages from the loss of its valuable employee.

5. Furthermore, Tsirakis, by his conduct, has forfeited any right to use Field Street's confidential information. Accordingly, Tsirakis' admitted use and disclosure of Field Street's confidential information was unlawful, entitling Field Street to damages and injunctive relief prohibiting Tsirakis' further unlawful exploitation of Field Street's confidential information.

6. Field Street also rightfully seeks a declaratory judgment confirming the rescission of the Separation Agreement due to Tsirakis' willful and material breach of that agreement, which wholly deprived Field Street of the fruits of the bargain and defeated the very purpose of the agreement.

## JURISDICTION

7. To the extent that the Court has jurisdiction over Plaintiff's Complaint, this Court has jurisdiction over Field Street's counterclaims pursuant to 28 U.S.C. § 1367(a), insofar as the facts alleged herein are so related to the facts alleged in the Complaint as to form part of the same case or controversy under Article III of the United States Constitution.

## FACTS

8. Field Street is an SEC-registered fixed income and global macro trading-focused alternative asset manager, with several billion dollars in assets under management and a team that includes approximately 20 investment professionals.

9. Tsirakis joined Field Street in January 2011 as a portfolio manager, working under an employment agreement with Field Street. The relevant operative agreements at the time of his resignation in 2015 included his amended employment agreement dated March 28,

2014, together with a Confidentiality, Proprietary Rights, Non-Solicitation and Non-Competition Agreement of the same date (the "Confidentiality Agreement").

10.     On or about April 28, 2015, Tsirakis voluntarily resigned from his employment at Field Street in order to start his own hedge fund.

11.     Pursuant to the terms of his employment agreement and deferred compensation agreements, by his resignation, Tsirakis immediately relinquished any right to receive incentive compensation or any other payments (other than salary), including any previously awarded but unvested deferred compensation. In other words, the suggestion in the Complaint that Tskirakis was owed any severance or other compensation as a result of his voluntary resignation is completely meritless.

12.     Prior to entering into the Separation Agreement, Field Street was under no existing legal obligation to pay Tsirakis any compensation (apart from salary through his last day of employment), including the amount specified as severance pay in the Separation Agreement or to grant him any rights to use Field Street's confidential information.

13.     Despite the fact that Tsirakis was not owed any compensation (apart from salary through his termination date), Field Street and Tsirakis entered into a Separation Agreement on June 19, 2015, wherein Field Street agreed to pay Tsirakis a handsome severance payment in 2016 and grant him a limited right to use certain confidential "track record" information of Field Street.

14.     The *quid pro quo* for the rights and benefits granted to Tsirakis under the Separation Agreement was Tsirakis' commitment to abide by and expand certain restrictive covenants which were already in place under the Confidentiality Agreement, along with a general release of claims and other terms set forth in the Separation Agreement. In form and in

substance, the parties agreed that Tsirakis would be paid a large sum of money if he adhered to the terms of the Separation Agreement, including the restrictive covenants.

15.    Chief among Field Street's objectives in agreeing to terms with Tsirakis was to ensure that Tsirakis did not attempt to poach Field Street's talented team of investment professionals, and in particular, the employees who had worked closely with Tsirakis under his direction.  This objective was communicated repeatedly to Tsirakis and his counsel during the negotiations that led up to the Separation Agreement and the central importance of Tsirakis' renewed commitment to abide by his restrictive covenants was reflected in the Separation Agreement's terms.

16.    More specifically, the Separation Agreement made the payment of severance contingent on Tsirakis' compliance with his obligations under the agreement and further provided that if Tsirakis breached "Section 7(c)(ii) (Non-Solicitation of Employees) or Section 7(c)(iii) (Non-Competition)," Tsirakis would have to pay back the vast majority of any severance already paid to him, as liquidated damages for his breach.

17.    As Tsirakis noted in his publicly-filed Complaint (which disclosed the then-confidential terms of the Separation Agreement), Section 7(c)(ii) of the Separation Agreement provided, in pertinent part:

> As part of the consideration for the Severance Compensation, you hereby agree that for a period of five (5) years after the Separation Date, you will not, without the prior written consent of the Company, directly or indirectly: (1) hire, solicit, recruit, induce, procure or attempt to hire, solicit, recruit, induce or procure, directly or indirectly, any person who is an employee or member of the Company or any affiliated or related entity and who was such an employee or member at any time during the final twelve (12) months of your employment; (2) assist in hiring any such person by any other individual, sole proprietorship, company, partnership, broker-dealer, investment adviser, investment company, hedge fund, bank, mutual fund or other enterprise; or (3) encourage any

such person to terminate his or her employment or membership with the Company or any affiliated or related entity.

18.     Section 7(a) of the Separation Agreement also placed certain conditions on Tsirakis' potential use of the confidential "track record" information, including, among other conditions that:

- Tsirakis must remain "in full compliance with" the Separation Agreement's terms;

- Tsirakis' use of the information must be in "compliance with applicable law" and must include certain disclaimers;

- Tsirakis must provide, upon Field Street's request, full disclosure to Field Street of any written materials describing or referencing the track record information; and

- Tsirakis was required, "prior to and as a condition of the use of the Track Record by any Tsirakis Affiliate," to have such affiliate execute and deliver to Field Street an "Exculpation, Indemnity and Defense Undertaking" set forth as an exhibit to the Separation Agreement.

19.     Tsirakis further agreed in the Separation Agreement that "the confidentiality of this Agreement is important, and [Tsirakis] hereby agree[s] that the terms of this Agreement will not be disclosed without the prior written consent of Field Street . . ."

20.     Despite Tsirakis' promises in the Separation Agreement, which reflected a clear understanding that Tsirakis would not build his new firm using Field Street's employees (or even attempt to do as much) or improperly use Field Street's confidential information, he very quickly reneged on his promises.

21.     "Employee A," as alluded to in the Complaint, began employment at Field Street in 2013. For the vast majority of her employment at Field Street, she reported to Tsirakis. She was trained by Field Street and was given increasing responsibility over the course of her employment at Field Street.

22.     Tsirakis admits in his Complaint that, in or about late fall 2015, he and Employee A were involved in communications in which Tsirakis, either in response to an overture from Employee A or of his own accord, invited Employee A to work at his new business or otherwise communicated that he was willing to hire her. Tsirakis claims in his Complaint that he informed Employee A that he could not hire her unless he obtained Field Street's written permission due to his restrictive covenant with Field Street. Such conduct – including Tsirakis' disclosure to an employee he formerly managed at Field Street about the nature of his restrictive covenant and the possibility that Field Street could or would consent in writing to waive that restriction – plainly violated the Separation Agreement and was exactly the sort of conduct that Field Street sought to foreclose by entering into that agreement.

23.     Upon information and belief, Employee A and Tsirakis discussed who should approach Field Street in order to obtain its written consent to Tsirakis' hiring of Employee A, and Tsirakis directed or encouraged Employee A to approach Field Street herself to obtain such permission.

24.     As a result of Tsirakis' actions, on or about December 8, 2016, Employee A informed Rod Gancas, Chief Investment Officer of Field Street that she intended to resign her employment with Field Street in order to work for Tsirakis and Employee A requested Field Street's permission to allow Tsirakis to hire her. Mr. Gancas declined to grant such permission

and expressed his disappointment regarding her desire to leave Field Street and his disapproval that Tsirakis had interfered with Employee A's employment with Field Street.

25.    Mr. Gancas and Field Street's Head of Business Strategy spoke with Employee A on multiple occasions on the morning of December 8, 2016, and ultimately suggested that Employee A could have the rest of the day off, or longer if necessary, affording her time to reconsider her decision to leave Field Street to work for Mr. Tsirakis.

26.    The following day, Employee A and Field Street's Head of Business Strategy spoke again, and Employee A indicated that she had not changed her mind and still intended to leave to work for Tsirakis but that she was willing to return to the office to transition her duties to others in a professional manner.

27.    In light of Employee A's refusal to change her decision to leave Field Street to work for Mr. Tsirakis, on December 10, 2015, Field Street informed Employee A that it was accepting her resignation and offered her a separation agreement.

28.    Employee A has never returned to work for Field Street and has never claimed to Field Street that she was fired by Field Street – a claim that would be utterly false if made.  Her last day of employment was December 10, 2015, when Field Street accepted her resignation effective that day.

29.    On January 4, 2016 – the same day that Tsirakis filed this action – Employee A sent an email to Mr. Gancas, once again requesting permission to work for Tsirakis.  In the January 4 email, Employee A explained that although she enjoyed working at Field Street, "the potential opportunity to be part of a start-up firm with [Tsirakis], especially given our past relationship, is quite attractive to me."

30.     Employee A's conduct leaves no doubt that Tsirakis, by his actions and words, conveyed to Employee A the fact that he was interested in hiring her and would hire her if Field Street granted him permission to do so. Tsirakis' conduct was an attempt to recruit Employee A and he encouraged her to resign her employment with Field Street.

31.     On December 15, 2015, Field Street sent a letter to Tsirakis' counsel informing Tsirakis that it had learned of his breach of his obligations with respect to Employee A.

32.     Among other things communicated to Tsirakis in the letter, Field Street revoked its permission previously granted to Tsirakis to use the confidential track record information – as Field Street was permitted to do pursuant to Section 7(a)(iv)(C) once it learned that Tsirakis had failed to comply with the Separation Agreement. The December 15 letter also requested that Tsirakis provide copies of any written materials in his possession containing, describing or referencing Field Street's confidential track record information, as provided for in Section 7(a)(vi)(B) of the Separation Agreement.

33.     On December 18, 2015, Tsirakis, through his counsel, denied breaching the Separation Agreement and indicated that he would provide, at a later date, the written materials requested by Field Street.

34.     Subsequently, Tsirakis, through counsel, transmitted a single four-page document with confidential track record information. The document was plainly incomplete on its face, as it did not have any title page, introduction, or other narrative content. Either the document was not fully disclosed to Field Street as required or Tsirakis was intentionally and in bad faith attempting to circumvent his obligations by taking the position that the truncated document reflected his complete written presentation to investors referencing the track record.

35.     On January 4, 2016, Tsirakis filed his Complaint in this action.  In his Complaint, not only did Tsirakis admit to conduct that violated the Separation Agreement with respect to Employee A, he also admitted that he had already "shared with prospective investors his Track Record . . ."

36.     At no time prior to January 4, 2016 had Tsirakis provided an "Exculpation, Indemnity and Defense Undertaking" executed by his new firm, as required by Section 7(a)(vi)(C) of the Separation Agreement.

37.     On January 15, 2016, Field Street, through the parties' respective counsel, wrote to Tsirakis, declaring that Tsirakis' conduct – including his breach of the Separation Agreement's confidentiality provision, his conduct with respect to Employee A, his failure to provide full disclosure of the track record materials, and his failure to provide the "Exculpation, Indemnity and Defense Undertaking" prior to using the confidential track record information – amounted to a material breach of the Separation Agreement and that Field Street would no longer honor nor seek to enforce the Separation Agreement, considering such agreement to be rescinded and a nullity.  Field Street also demanded in the January 15 letter that Tsirakis return all of Field Street's confidential information and provide assurances that he would refrain from using such information.

38.     On February 1, 2016, Tsirakis, through the parties' respective counsel, continued to deny the reality of his various breaches of the Separation Agreement but, at the same time, attempted to belatedly deliver an "Exculpation, Indemnity and Defense Undertaking" executed by Tsirakis on behalf of Tenaron Capital GP LLC and Tenaron Capital Management LP, dated January 19, 2016.

39.     Notably, Tsirakis' February 1 letter wholly ignored Field Street's demand for the return of its confidential information and for assurances that Tsirakis would stop using such information.

40.     Upon information and belief, Tsirakis continues to market his new hedge fund(s) to potential investors by unlawfully using Field Street's confidential track record information.

**FIRST CLAIM FOR RELIEF**
(Declaratory Judgment for Rescission of the Separation Agreement)

41.     Field Street re-alleges and incorporates by reference the allegations in paragraphs 1-35 of its Counterclaims, as if fully set forth herein.

42.     By the conduct alleged above, Tsirakis materially breached his obligations under the Separation Agreement.

43.     Tsirakis' breaches of the Separation Agreement were willful.

44.     Tsirakis' breaches defeated the very object of the contract, entitling Field Street to rescind the contract, which it validly did.

45.     Tsirakis has refused to acknowledge the rescission of the Separation Agreement.

46.     Accordingly, Field Street is entitled to a declaratory judgment that the Separation Agreement is rescinded and without any force or effect and that Tsirakis' obligations to Field Street with respect to the confidential track record information are governed by the agreements that preceded the Separation Agreement, namely, the Confidentiality Agreement.

**SECOND CLAIM FOR RELIEF**
(Breach of Duty of Loyalty)

47.     Field Street re-alleges and incorporates by reference the allegations in paragraphs 1- 42 of its Counterclaims, as if fully set forth herein.

48.     Tsirakis has no legal right to use or disclose Field Street's confidential information, including the track record information.

49.     Field Street takes reasonable steps to maintain the confidentiality of its confidential information, including the track record information, such as physical security measures for its office space, electronic protection for information systems, and the prudent use of non-disclosure or confidentiality agreements with persons handling such information.

50.     As a former employee of Field Street, Tsirakis has a continuing duty of loyalty that requires that he refrain from using or disclosing Field Street's confidential information.

51.     By his use and disclosure of Field Street's confidential information, Tsirakis has breached his duty of loyalty to Field Street.

52.     Upon information and belief, as a direct and proximate result of Tsirakis' breach, Field Street has suffered damages in an amount to be determined at trial.

53.     Field Street is also threatened with irreparable harm from Tsirakis' unlawful use of its confidential information, entitling it to injunctive relief requiring Tsirakis to refrain from using or disclosing Field Street's confidential information.

54.     Tsirakis' breach of his duty of loyalty was intentional, wanton and willful, entitling Field Street to an award of punitive damages.

### THIRD CLAIM FOR RELIEF
(Breach of Contract)

55.     Field Street re-alleges and incorporates by reference the allegations in paragraphs 1- 50 of its Counterclaims, as if fully set forth herein.

56.     Under the Confidentiality Agreement, Tsirakis owed Field Street a contractual duty not to use or disclose its confidential information and a contractual duty to refrain from interfering with its relationships with its employees.

57.     In the alternative, and solely in the event that the Court declines to order rescission of the Separation Agreement, Tsirakis owed such duties pursuant to the Separation Agreement.

58.     By the conduct described above, including his use of the confidential track record information and his attempt to recruit Employee A, which encouraged Employee A to terminate her employment at Field Street, Tsirakis has materially breached his contractual duties to Field Street.

59.     Upon information and belief, as a direct and proximate result of Tsirakis' breaches, Field Street has suffered damages in an amount to be determined at trial.

60.     Field Street is also threatened with irreparable harm from Tsirakis' unlawful use of its confidential information, entitling it to injunctive relief requiring Tsirakis to refrain from using or disclosing Field Street's confidential information.

**FOURTH CLAIM FOR RELIEF**
(Unfair Competition)

61.     Field Street re-alleges and incorporates by reference the allegations in paragraphs 1- 56 of its Counterclaims, as if fully set forth herein.

62.     Tsirakis has used unfair and wrongful means to compete with Field Street in his new venture, including by unlawfully misappropriating Field Street's confidential information and by his interference with Field Street's relationship with Employee A.

63.     Additionally, Tsirakis' ongoing attempts to market his new venture using Field Street's confidential track record information are likely to cause confusion in the marketplace concerning the roles of Field Street and Tsirakis, both as to the historical performance of Field Street (which Tsirakis is attempting to pass off as his own) and as to Field Street's involvement in, or approval of, Tsirakis' new venture.

64.     Upon information and belief, as a direct and proximate result of Tsirakis' unfair competition, Field Street has suffered damages in an amount to be determined at trial.

65.     Field Street is also threatened with irreparable harm from Tsirakis' unlawful unfair competition, entitling it to injunctive relief requiring Tsirakis to refrain from such unfair competition.

66.     Tsirakis' unfair competition was intentional, wanton and willful, entitling Field Street to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Defendant-Counterclaimant Field Street respectfully requests that this Court enter judgment as follows:

(A)     dismissing Plaintiff's First Amended Complaint in its entirety, with prejudice;

(B)     on its First Claim for Relief, a declaratory judgment, pursuant to 28 U.S.C. § 2201, declaring that the Separation Agreement is rescinded and without any force or effect and that the parties' obligations are governed by the agreements that preceded the Separation Agreement, including the Confidentiality Agreement;

(C)     on its Second Claim for Relief, an award of damages to be determined at trial, including compensatory and punitive damages, together with an injunction requiring Tsirakis to refrain from using or disclosing Field Street's confidential information;

(D)     on its Third Claim for Relief, an award of damages to be determined at trial, together with an injunction requiring Tsirakis to refrain from using or disclosing Field Street's confidential information;

(E)      on its Fourth Claim for Relief, an award of damages to be determined at trial, including compensatory and punitive damages, together with an injunction requiring Tsirakis to refrain from the acts of unfair competition alleged herein;

(F)      prejudgment interest;

(G)      awarding Field Street its costs, expenses and attorneys' fees incurred in defending against Tsirakis' claims; and

(G)      such other and further relief as the Court deems just and proper.

Dated: New York, New York
      February 11, 2016

                      SIDLEY AUSTIN LLP


                      By:_____/s/ Eric G. Hoffman_____
                                Eric G. Hoffman

                      Eric G. Hoffman
                      787 Seventh Avenue
                      New York, New York  10019
                      tel: (212) 839-5300
                      fax: (212) 839-5599
                      eric.hoffman@sidley.com

                      *Attorneys for Defendant*